UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| | * | |
| v. | * | |
| | * | |
| | * | |
| LEONARDO LARA, | * | Criminal Action No. 1:23-cr-10207-ADB |
| | * | |
| Defendant. | * | |
| | * | |
| | * | |
| | * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

On October 20, 2025, following a five-day trial, a jury found Leonardo Lara guilty of conspiring to distribute and to possess with the intent to distribute controlled substances, including cocaine.  [ECF No. 263].  Lara orally moved for a judgment of acquittal at the close of the evidence, and the Court denied the motion.  [ECF No. 261].  Currently before the Court is Lara's renewed motion for acquittal and for a new trial.  [ECF No. 290].  For the reasons set forth below, the motion is **DENIED**.

I.      **BACKGROUND**

A.      **Relevant Trial Evidence**

In reaching its verdict, the jury could have found the following, based on the evidence presented at trial.[1]  This summary is intended to provide an overview of events and is supplemented as necessary throughout the memorandum and order with information about specific exhibits and testimony.

1.      **Navarro-Morfin's Testimony**

Merced Navarro-Morfin, who was indicted as one of Lara's co-conspirators and pled guilty prior to Lara's trial, [ECF No. 1]; [ECF No. 111], testified at trial pursuant to a cooperation agreement with the government, see [ECF No. 277 at 76].  Navarro-Morfin met Lara in 2016, and the two men eventually became "partners" in the "[c]ocaine business."  [Id. at 72]. They used Navarro-Morfin's connections to import cocaine from Mexico, stored the cocaine at a house located at 7 Linton Avenue in Methuen, Massachusetts, where Lara was living, resold the cocaine at "a higher price," and kept the proceeds at 7 Linton Avenue and at the address where Navarro-Morfin was staying.  [Id. at 80–82, 85, 88–89].  In early 2022, Navarro-Morfin received a fifteen-kilogram shipment and brought it to 7 Linton Avenue, and then he and Lara sold it together.  [Id. at 86–88].  In late March or early April 2022, Navarro-Morfin and Lara received a twenty-kilogram shipment of cocaine at 7 Linton Avenue, [id. at 95–96], and then started to sell it, [id. at 97], paying for that shipment with the proceeds of their sales, [id. at 104–06].  Once they had paid for the twenty-kilogram shipment, Navarro-Morfin received a second twenty-kilogram shipment at 7 Linton Avenue, [id. at 106–07], and Navarro-Morfin and Lara began selling that cocaine as well, [id. at 107–08].

---

[1] The Court presents the evidence in the light most favorable to the verdict.  See United States v. Meléndez-González, 892 F.3d 9, 17 (1st Cir. 2018).

Navarro-Morfin testified that, on April 19, 2022, Lara traveled to New York to "bring two kilos of cocaine" to "[a] client of his," and to pick up money from a client of Navarro-Morfin's in Connecticut on his way back. [ECF No. 277 at 108–09, 114–15]. At 6:57 PM on April 19, 2022, Lara called Navarro-Morfin, telling him that he was in New York but could not deliver one of the two kilograms of cocaine, and the men discussed what to do with the remaining kilogram. [Id. at 120–21].[2] The next day, Lara called Navarro-Morfin to confirm that he had met with Navarro-Morfin's client in Connecticut. [Id. at 121].

### 2. The Government's Investigation of Lara

Law enforcement began investigating Lara in early April 2022 as part of an undercover money laundering investigation. [ECF No. 276 at 8–13]. After obtaining a ping warrant for Lara's cell phone, [id. at 19–20, 45], law enforcement tracked Lara to a house on 7 Linton Avenue in Methuen, [id. at 22–29], to which Lara had a key, [id. at 30], and concluded, based on Lara's cell phone pings, that he lived there, [id. at 34–37, 45].

On April 19, 2022, the government tracked Lara's phone as he drove from Massachusetts to New Jersey, where he arrived around 10:00 PM, [ECF No. 276 at 45–46], making a brief stop in Paterson, New Jersey, around 10:13 PM, before heading east to Fort Lee, New Jersey, and then north to Yonkers, New York, where he spent the night, [id. at 47–48, 50–52]. The stop in Paterson, New Jersey, was consistent, according to law enforcement, with a "burn and turn," that is, a quick trip to drop off or pick up narcotics. [Id. at 51–52]. The next day, Lara continued north via Connecticut, [id. at 56–57], back to Massachusetts, [id. at 52], where he was stopped by law enforcement at approximately 2:54 PM on Interstate 84 in Sturbridge, Massachusetts, [id. at

---

[2] Based on the cell phone location information for Lara's cell phone, Lara left Massachusetts between 5:58 PM and 6:13 PM, [ECF No. 276 at 46], which appears to be inconsistent with Navarro-Morfin's testimony that suggested that Lara was already in New York at 6:57 PM, [ECF No. 277 at 120–21].

54].  Law enforcement released Lara from the traffic stop at approximately 4:31 PM, [id. at 60], and, at 4:40 PM, Lara made a short call to Navarro-Morfin, [id. at 60–61, 84]; [ECF No. 277 at 111, 133–34], during which, according to Navarro-Morfin, he asked Navarro-Morfin whether Navarro-Morfin had "something at the house," [ECF No. 277 at 134].

Shortly afterwards, at approximately 5:06 PM, law enforcement observed Navarro-Morfin and another man, Leandro Martinez, drive up to 7 Linton Avenue.  [ECF No. 276 at 63–66].  Navarro-Morfin and Martinez got out of the car, entered the house with an empty red bag, and, when they reemerged six minutes later, at 5:12 PM, the bag was full.  [Id. at 66–68].  Law enforcement then arrested both Martinez and Navarro-Morfin, and seized the red bag and a blue bag.  [Id. at 70–71].  The red bag was found to contain eight kilogram bricks of cocaine, and the blue bag to contain one further kilogram brick of cocaine and $195,845 in cash.  [Id. at 69–83]; [ECF No. 298 at 16].  The brick of cocaine found in the blue bag had an imprint of the face of a lion on it that matched the imprint on some of the bricks of cocaine found in the red bag.  [ECF No. 275 at 18]; [ECF No. 276 at 74]; [ECF No. 277 at 144]; [ECF No. 298 at 10].

Law enforcement officers, pursuant to a search warrant, searched 7 Linton Avenue, [ECF No. 276 at 85], where they found mail addressed to Lara's ex-girlfriend, [id. at 94–95], and Lara, [id. at 96–99], wrapping materials that matched the materials in which the cocaine and money recovered by law enforcement had been wrapped, [id. at 101–02], and scales and a hydraulic press that could be used to press kilograms of cocaine, [id. at 102–04].

**B.**    **Navarro-Morfin's April 19, 2022, Text Messages**

On the final day of trial, before the government rested, defense counsel asked to address the Court at an ex parte sidebar.  See [ECF No. 299].  At sidebar, defense counsel stated that he believed there had been "a fraud on the court," because Navarro-Morfin had "testified

4

fraudulently" about a delivery of two kilograms of cocaine in New Jersey. [Id. at 3–4].
Specifically, defense counsel maintained that there were text messages, found on "[o]ne of the
phones that the government apparently didn't look at," [id. at 3], showing that Lara had delivered
the cocaine for Navarro-Morfin, but Navarro-Morfin had testified that "it was [Lara's], he had
nothing to do with it, didn't know anything about it." [Id. at 4]. Defense counsel explained that
he did not confront Navarro-Morfin with this alleged inconsistency because to do so "would
have basically put two kilos in [Lara's] possession" and "implicate[d] [Lara] in a crime." [Id. at
3–4]. When the Court asked defense counsel whether he wanted to confront the government
with the text messages, defense counsel declined, reiterating that he did not want the government
to introduce the text messages because doing so would "hurt" and "discredit" Lara. [Id. at 4].

Although the text messages at issue were not shown to the Court or introduced into
evidence at trial, the parties have submitted them to the Court as part of their post-trial briefing.
In the relevant portion of the messages, Navarro-Morfin communicated with an unidentified
person with a phone number ending in -0988 on April 18 and 19, 2022. [ECF No. 305-2].
Navarro-Morfin and the person had two phone calls on April 18, 2022, at 11:38pm and 11:46pm.
[ECF No. 305-2 at 2].[3] The next evening, Navarro-Morfin and the person exchanged the
following messages:

| | | |
|---|---|---|
| Navarro-Morfin: | Cheese | 8:11 PM |
| | Give me a good place | 8:12 PM |
| | Yours bc this dude panics | 8:12 PM |
| | He doesn't want to do it out in the open | 8:12 PM |
| -0988: | 421 E 31 Street | 8:12 PM |
| Navarro-Morfin: | OK | 8:13 PM |
| -0988: | As soon as I get home | 8:13 PM |
| Navarro-Morfin: | Don't worry about him | 8:13 PM |

---

[3] The times given in the cellphone extraction report are in UTC+0 time, four hours behind
Eastern Time. [ECF No. 305 at 24 n.2]. The Court has converted all times into Eastern Time for
ease of reference.

|              |                   |          |
|--------------|-------------------|----------|
|              | OK Chis           | 8:13 PM  |
|              | He's on his way   | 8:13 PM  |
| -0988:       | No problem        | 8:13 PM  |
| Navarro-Morfin: | I'll let you know | 8:13 PM  |
| -0988:       | OK                | 8:14 PM  |
| Navarro-Morfin: | 10 minutes      | 10:04 PM |
|              | Pay attention     | 10:04 PM |
| -0988:       | Ok                | 10:04 PM |
|              | Yup, papa         | 10:14 PM |
|              | 2                 | 10:15 PM |
| Navarro-Morfin: | Yes             | 10:18 PM |
|              | OK                | 10:18 PM |

[ECF No. 305-2 at 3–8].[4]

## II.    MOTION FOR ACQUITTAL

### A.    Legal Standard

To prevail on a motion for judgment of acquittal under Federal Rule of Criminal Procedure 29, a defendant must "show that the evidence presented at trial, even when viewed in the light most favorable to the government, did not suffice to prove the elements of the offenses beyond a reasonable doubt." United States v. Acevedo, 882 F.3d 251, 257 (1st Cir. 2018). The Court must "consider all the evidence . . . admitted" at trial, "even if the [C]ourt erroneously admitted some of that evidence." United States v. Martínez-Hernández, 118 F.4th 72, 80 (1st Cir. 2024) (quoting United States v. Santiago-González, 825 F.3d 41, 46 (1st Cir. 2016)), cert. denied, 146 S. Ct. 126 (2025). It may not consider "evidence that the jury did not hear." Id. The Court does not "weigh the evidence or make any credibility judgments, as those are left to the jury." United States v. Merlino, 592 F.3d 22, 29 (1st Cir. 2010) (citing United States v. Ayala-Garcia, 574 F.3d 5, 11 (1st Cir. 2009)). Rather, it "resolve[s] all credibility disputes in the verdict's favor," id. (quoting United States v. Olbres, 61 F.3d 967, 970 (1st Cir. 1995)), and

---

[4] The original messages were in Spanish. [ECF No. 290-2 at 30–36]. They are here reproduced in the government's translation, [ECF No. 305].

"examine[s] the evidence—direct and circumstantial—as well as all plausible inferences drawn therefrom, in the light most favorable to the verdict," Meléndez-González, 892 F.3d at 17 (quoting United States v. Wyatt, 561 F.3d 49, 54 (1st Cir. 2009)).

The verdict will be upheld if it is "supported by a plausible rendition of the record." Merlino, 592 F.3d at 29 (quoting United States v. Bristol-Mártir, 570 F.3d 29, 38 (1st Cir. 2009)). "If the evidence viewed in the light most favorable to the verdict gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence of the crime charged," the Court must reverse the conviction because "where an equal or nearly equal theory of guilt and a theory of innocence is supported by the evidence viewed in the light most favorable to the prosecution, a reasonable jury must necessarily entertain a reasonable doubt." United States v. Burgos, 703 F.3d 1, 10 (1st Cir. 2012) (quoting United States v. Flores-Rivera, 56 F.3d 319, 323 (1st Cir. 1995)).

**B.      Discussion**

Lara argues that the Court should reverse his conviction because Navarro-Morfin committed perjury. [ECF No. 290 at 5]. Specifically, he contends that Navarro-Morfin's testimony that Lara had his own drug customers was false and contradicted by the cell phone messages that were not admitted at trial, [id. at 6–8], and that, "had th[e] jury been informed about Navarro-Morfin's perjury, any rational juror would have had a reasonable doubt" about Lara's guilt, [id. at 5]. The government counters that the Court may, for purposes of Lara's Rule 29 motion, consider only the evidence that was before the jury, and that that evidence—which included Navarro-Morfin's testimony but did not include the text messages to which Lara refers in his motion—was sufficient to prove Lara's guilt. [ECF No. 305 at 13–19].

7

The Court agrees with the government.  As an initial matter, "evidence that the jury did not hear," such as the text messages not admitted at trial, cannot justify reversal of Lara's conviction.  Martínez-Hernández, 118 F.4th at 80.  Nor can the Court discount Navarro-Morfin's testimony as Lara urges.  "The uncorroborated testimony of a government informant is sufficient to establish the facts underlying a defendant's conviction," Merlino, 592 F.3d at 30, provided that it is not "incredible or insubstantial on its face," United States v. Santos-Rivera, 726 F.3d 17, 24 (1st Cir. 2013) (quoting United States v. González-Vázquez, 219 F.3d 37, 46 (1st Cir. 2000)).  Here, Navarro-Morfin testified that he and Lara were "partners" in the "[c]ocaine business," [ECF No. 277 at 72], agreed to keep the cocaine at the house at 7 Linton Avenue where Lara was living, [id. at 81], and received multiple shipments of cocaine that they stored at the house and that he and Lara sold together, [id. at 88, 95–97, 106–07].  Navarro-Morfin also testified that, on April 19, 2022, Lara traveled to New York to sell two kilograms of cocaine to a client of Lara's and pick up drug money for Navarro-Morfin on his way back to Massachusetts.  [Id. at 108–09, 120–21]; [ECF No. 275 at 4].  This testimony is not incredible or insubstantial on its face, and, viewed in the light most favorable to the verdict, it amply supports Lara's conviction.

Moreover, much of Navarro-Morfin's testimony was corroborated by other evidence submitted to the jury, including cell phone pings and logs of calls and texts between Lara and Navarro-Morfin, see, e.g., [ECF No. 276 at 46–47, 52, 56, 60–61]; [ECF No. 277 at 118–19], and, more importantly, evidence found at 7 Linton Avenue.  This evidence alone, viewed in the light most favorable to the verdict, would have been sufficient to support Lara's conviction, even without Navarro-Morfin's testimony, because it permitted the jury to conclude that Lara was in a drug conspiracy with Navarro-Morfin.  The jury could reach this conclusion from the fact that Lara stored eight kilograms of cocaine at 7 Linton Avenue, where he lived, and that Navarro-

Morfin and Martinez retrieved that cocaine minutes after Navarro-Morfin received a call from Lara, who had just been stopped by law enforcement. Because a "plausible rendition of the record" supports the jury's verdict, Merlino, 592 F.3d at 29 (quoting Bristol-Mártir, 570 F.3d at 38), Lara's motion for acquittal is **DENIED**.

## III.    MOTION FOR NEW TRIAL

### A.    Legal Standard

On a motion for a new trial under Federal Rule of Criminal Procedure 33, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "In considering a motion for a new trial, district courts may 'weigh the evidence and evaluate the credibility of witnesses, . . . [but] the remedy of a new trial is sparingly used, and then only where there would be a miscarriage of justice and where the evidence preponderates heavily against the verdict.'" Merlino, 592 F.3d at 32 (quoting United States v. Wilkerson, 251 F.3d 273, 278 (1st Cir. 2001)).

As relevant here, the Supreme Court's decision in Napue v. Illinois, 360 U.S. 264 (1959), prohibits the government from "knowingly us[ing] false evidence, including false testimony, to obtain a tainted conviction, regardless of whether the prosecutor solicits false evidence or allows false evidence to go uncorrected when it appears." United States v. Vavic, 139 F.4th 1, 28 (1st Cir. 2025) (citation modified). "A new trial is required if the false testimony could in any reasonable likelihood have affected the judgment of the jury." Id. (quoting Giglio v. United States, 405 U.S. 150, 154 (1972)); see also Glossip v. Oklahoma, 604 U.S. 226, 246 (2025) (noting that "this materiality standard requires 'the beneficiary of [the] constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained'" (quoting United States v. Bagley, 473 U.S. 667, 680 n.9 (1985))). "A defendant

9

cannot establish a Napue error," however, "when he intentionally does not object to . . . evidence that he knows to be false." Vavic, 139 F.4th at 28.

### B.    Discussion

Lara argues that a new trial is required because the government failed to correct Navarro-Morfin's testimony that Lara traveled to New York to bring cocaine to one of Lara's own customers—testimony that, according to Lara, the government knew to be false. [ECF No. 290 at 11–12]. This argument fails for several independent reasons.

First, Lara has not shown that Navarro-Morfin's testimony was false. Lara claims that Navarro-Morfin perjured himself when he stated that, on April 19, 2022, Lara delivered cocaine in New York to a client of Lara's. [ECF No. 290 at 7]. According to Lara, Navarro-Morfin's April 19, 2022, text messages with the person with the -0988 number "clearly contradict[]" his testimony because they show that Lara was delivering cocaine in New Jersey on Navarro-Morfin's behalf to a person who was not Lara's own customer. [Id.].

Lara's reading of the text messages, however, relies on a series of unsubstantiated assumptions about those messages. The messages appear to show Navarro-Morfin communicating with another person about a drug delivery on April 19, 2022, at a time that coincides with Lara's stop in Paterson, New Jersey. They do not, however, clearly establish several key factual premises of Lara's argument, namely that (1) the person with the -0988 number was the same person Navarro-Morfin referenced in his testimony as being Lara's customer; (2) the person delivering drugs to the person with the -0988 number was Lara; (3) the person with the -0988 number was based in Paterson, New Jersey, rather than New York; (4) Lara went only to New Jersey on his trip, and not also to New York; and (5) the person with the -0988 number was Navarro-Morfin's customer, but not (or not also) Lara's. Moreover, even

10

assuming that Navarro-Morfin's testimony was not fully consistent with the text messages—

because, for example, Navarro-Morfin testified that Lara was delivering drugs in New York

when the messages, as well as other evidence, suggested that Lara was in New Jersey—it is

unlikely that the Court would find that such an inconsistency would, by itself, be sufficient to

meet the Napue standard.  See United States v. Díaz-Colón, 163 F.4th 1, 34 (1st Cir. 2025)

(finding no Napue violation where audio recording was "consistent" with witness's testimony

and, even if witness's testimony was false, "it d[id] not necessarily follow that [his] testimony at

trial more than three years [after the meeting in question] was knowingly false rather than a

mistaken convergence of memories"); United States v. Pagán-Santini, 451 F.3d 258, 265 (1st

Cir. 2006) ("[M]erely to point to inconsistencies between two versions of a witness'[s] testimony

does not show that the government, in presenting the later version, was presenting false

testimony, let alone testimony known to be false."); Moore v. Gray, No. 23-cv-11973, 2026 WL

102409, at *6 (D. Mass. Jan. 13, 2026) ("[T]estimony that presents 'mere inconsistencies' does

not meet the Napue standard." (quoting United States v. Griley, 814 F.2d 967, 971 (4th Cir.

1987))).  Accordingly, based on the text messages alone, the Court cannot conclude that

Navarro-Morfin's testimony that Lara went to New York on April 19, 2022, to deliver cocaine to

a customer of Lara's was false.

Second, even if the portion of Navarro-Morfin's testimony highlighted by Lara was false

(and the government was aware of its falsity), the Court is not persuaded that it was material.  Of

course, if the jury had learned that Navarro-Morfin had perjured himself, that would have

affected its assessment of Navarro-Morfin's overall credibility.  See Glossip, 604 U.S. at 628.

On the other hand, as the government points out, [ECF No. 305 at 28], it is unlikely that the

precise details of Lara's drug delivery on April 19, 2022, would have reasonably affected the

11

jury's verdict on the conspiracy charge against Lara.  Whether the jury had concluded that Lara had attempted to deliver two kilograms of cocaine to his own customer in New York (as Navarro-Morfin testified) or that he had attempted to deliver two kilograms of cocaine to Navarro-Morfin's customer in New Jersey (as Lara contends the text messages show), it could have found him guilty of the conspiracy charged in the indictment.  More importantly, there was ample evidence against Lara—including the eight kilograms of cocaine seized from his house— that was entirely independent of Navarro-Morfin's testimony at trial.  Under these circumstances, the Court is not persuaded that any false testimony by Navarro-Morfin "could in any reasonable likelihood have affected the judgment of the jury." Vavic, 139 F.4th at 28 (quoting Giglio, 405 U.S. at 154).[5]

Third, even assuming that the government knowingly failed to correct false testimony by Navarro-Morfin, and that that false testimony was material, Lara cannot establish a Napue error because he chose not to object to the testimony at trial.  Defense counsel's ex parte colloquy with the Court made clear that the decision not to cross-examine Navarro-Morfin about the alleged inconsistency was a strategic one, as the text messages, on defense counsel's reading, "implicate[d] [Lara] in a crime."  [ECF No. 299 at 4].  In fact, defense counsel did not raise the alleged inconsistency either in his cross-examination of Navarro-Morfin or, separately, with the government, because he was concerned that the government would "then put that bit of evidence in."  [Id.].

Lara argues that defense counsel's failure to cross-examine Navarro-Morfin on his allegedly false testimony was not a strategic choice, but was "essentially . . . beyond defense

---

[5] The same is true for the other alleged misstatements by Navarro-Morfin that Lara identifies in his reply brief.  [ECF No. 321 at 1, 4].

counsel's control."  [ECF No. 290 at 8].  Here, however, defense counsel had neither a "conflict of interest" nor was he prevented by "circumstances essentially beyond his control" from raising or pursuing the issue at trial.  United States v. Mangual-Garcia, 505 F.3d 1, 11 (1st Cir. 2007) (quoting United States v. Iverson, 648 F.2d 747, 739 (D.C. Cir. 1981)).  In this regard, defense counsel's statements to the Court at sidebar strengthen rather than "undermine" the usual "presumption" that a defendant's failure to bring a known falsehood to the jury's attention reflects a strategic choice.  Id.  Those statements explicitly confirm that defense counsel did not tell the jury about the text messages that he claimed proved Navarro-Morfin had committed perjury because those text messages implicated Lara in a crime.  [ECF No. 299 at 4].  A defendant cannot establish a Napue error when he makes a strategic decision not to impeach a witness whom he knows to have testified falsely.  Vavic, 139 F.4th at 28.

## IV.    CONCLUSION

For the foregoing reasons, Lara's motion for judgment of acquittal and for new trial, [ECF No. 290], is **DENIED**.

**SO ORDERED.**

June 22, 2026

*/s/ Allison D. Burroughs*
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE